Filed 7/20/26  P. v. Manning CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL MANNING,<br>    Defendant and Appellant. | C102568<br><br>(Super. Ct. No. 22FE013178) |

Defendant Michael Manning appeals his convictions of unlawful possession of a firearm and ammunition.  His primary argument on appeal is that the trial court erred in excluding evidence regarding his wife's prior conviction for attempted involuntary manslaughter and her "admission to being vindictive."  We will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a); count one) and unlawful possession of ammunition (*id.*, § 30305, subd. (a); count two).  It was further alleged defendant had a prior strike.  (*Id.*, §§ 667, subds. (b)-(i), 1170.12.)  Two aggravating factors were also alleged.  (Cal. Rules of Court, rule 4.21.)

1

## I. Trial Testimony

During the July 2024 trial, Deputy Sheriff Steven Guild testified that, around midnight on August 2, 2022, he and his partner responded to a domestic violence call at a large apartment complex. The caller, V.G., (who defendant testified was his wife) told the two deputies that defendant had been "pulling on her," and she believed defendant would return. She also showed the deputies a photo that she took of firearms that defendant "possibly possessed." There was an unidentified man in the photo. At this point, Deputy Guild testified that "we would be looking for a gun."

As the two deputies and V.G. were talking, Deputy Guild noticed a "silhouette of a person" about 75 yards away, near a car. Soon afterward, V.G. pointed in the same direction and said she saw defendant. As defendant walked behind the patrol car, Deputy Guild approached and eventually detained him on suspicion of domestic violence. The officer never lost sight of defendant, did not see him throw or drop anything, and never saw anyone else near him.

After detaining defendant, Deputy Guild searched defendant but did not find any weapons. Defendant was then placed in the back of the patrol car. While Deputy Guild's partner talked to V.G., Deputy Guild retraced defendant's steps. He found a loaded Glock 30 semiautomatic pistol on the corner of a grassy patch, close to where he first saw defendant. The gun appeared to have been dropped, not hidden. Deputy Guild placed the firearm in the trunk of his patrol car and later booked it into evidence. Photos of the firearm and where it was found were shown to the jury. Video from Deputy Guild's bodycam was also shown to the jury.

Analysis of the firearm revealed three DNA contributors to the firearm frame area, with 83 percent of the DNA almost certainly coming from defendant. Both female and male DNA was present on the firearm. According to the criminologist, the DNA testing did not indicate who touched an item the most, or who touched it last.

2

The parties stipulated that defendant had a prior felony conviction. Defendant testified that he previously had a drug problem and had gone to prison for domestic abuse. V.G. was aware of his history of domestic violence.

Defendant testified that, on the day of the incident, he returned home from work and found his wife (V.G.), her son, her grandson, and her "nephew" in their apartment. Defendant learned that his wife's nephew was actually her ex-fiancé's nephew. Concerned that his wife was having an affair with her ex-fiancé, defendant argued with her about whether the nephew could come over to their home. The two had previously argued over other men. During this argument, his wife "got loud," and defendant grew angry and threatened to move out, making the wife angry. Defendant grabbed his television and, while walking out the door said, "to hell with it" and threw the television on the ground in the parking lot. The two had previously destroyed items during arguments, including televisions.

Defendant then decided to move one of his cars to a nearby parking lot because his wife had previously damaged one of his cars. He planned to return so he could also move his second car. He had done this about six or seven times before, and his wife knew his route.

As he was walking back toward his second car, defendant did not see police until he encountered them in the street. Defendant denied owning a gun or carrying one on the night of the incident, and he had "no idea" how the firearm got to the corner of the grassy area. He felt he was being wrongly accused in this case.

Defendant acknowledged that the photo of the guns that his wife showed to the responding deputies was taken in his bedroom, with the guns placed on his side of the bed. However, he denied being the man in the picture, and he reiterated that he did not own any of the guns in the picture. Defendant testified his wife's son owned a gun and had previously brought it to their apartment.

3

## II.   Evidence Regarding V.G.

V.G. had previously been convicted of attempted involuntary manslaughter.  She shot someone who had abused her and her child.

Defense counsel asked the court to admit evidence of this conviction because it showed V.G.'s "vindictive nature," lack of credibility, and familiarity with guns.  He noted that V.G. told the police, "You know my history, right?  I finna had to shoot my baby daddy."  According to defense counsel, V.G. also told a defense investigator that she was vindictive.

After reading a summary of the defense investigator's interview, the court stated that V.G.'s statement could mean that she was vindictive about defendant throwing the television, because defendant "allegedly came back drunk from … being with a friend she doesn't like," or "because in her past life she has been beaten, threatened and raped." The court stated it was "seeing a lot of 352 issues," cautioning that this would take an inordinate amount of time, and the prejudicial effect outweighed any probative value. The court promised to return to the issue later after V.G. could confer with her own counsel about whether she should testify.

Prior to voir dire, defendant clarified that he thought the evidence of V.G.'s vindictiveness was "pretty crucial" to his defense that his wife had framed him.  The court reasoned that, at best, such evidence might show her propensity to "do extreme things during domestic altercations," or to "carry guns."  The court stated, "It's all propensity evidence without an [Evidence Code section]1101exception." [1]

---

[1]   Undesignated statutory references are to the Evidence Code.

Section 1101 generally provides that evidence of a person's character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is inadmissible when offered to prove conduct on a specified occasion.  (§ 1101, subd. (a).)

4

Defense counsel responded that defendant's understanding of V.G.'s past showed why defendant did not want any guns in the house, and the jury would not believe him without "context." Counsel asserted it would help the jury understand why defendant left that night "when she started apparently accusing him of abuse and then returned when police were there."

The court clarified that, although the issue could be revisited later, pursuant to section 352[2] it would not at that time allow defendant to testify about his understanding of V.G.'s attempted involuntary manslaughter conviction. In addition, the court ruled there be no mention of defendant being aware that V.G. possessed guns in the past because it was inadmissible propensity evidence.

Later in the trial, the court ruled that nothing about V.G. "killing a baby daddy" or the fact that Deputy Guild may have overheard V.G. state, "I know you guys looked me up. I know you know my history" were admissible based on what the court knew at that time. The court reasoned this evidence was inadmissible hearsay, although it might be admissible as impeachment evidence if V.G. testified during trial. V.G. was subsequently called as a defense witness and exercised her Fifth Amendment right against self-incrimination.

Since defendant planned to testify, the trial court revisited argument about whether it should allow testimony about defendant's "state of mind because of potential fear of [V.G.]." The court stated it did not find such evidence to be admissible under section 1101 as "it would come in for additional character for violence for [V.G.]". The court was also concerned that such evidence was not relevant and that introducing it could not be done "quickly." (§ 352.) The court clarified that it would not allow any testimony

---

**2** Section 352 allows a trial court to exclude otherwise admissible evidence when its probative value is substantially outweighed by the probability that its admission will unduly consume time or create substantial danger of undue prejudice.

5

from defendant regarding the shooting of V.G.'s previous partner, or any statements regarding her alleged possession of guns. However, defendant could testify that V.G. was angry with him and wanted to get back at him. The court reasoned, "it's part of the defense in this case because the defense is that [V.G.] set [defendant] up."

During defendant's testimony, defense counsel asked him how the gun got "over there on that corner?" Defendant answered that he had "no idea" but suggested "it could have been [V.G.] setting me up." The court ordered the jury to disregard defendant's testimony that V.G. set defendant up. The court later explained it did so because the answer was speculative.

Prior to closing argument, the trial court held that defense counsel could argue that defendant was not the person who put the gun in the location where it was found. However, defense counsel could *not* argue that a "specific person" placed the gun there to "frame him" because there was no evidence that happened.

During closing argument, defense counsel told the jury that defendant's DNA profile, which matched a DNA profile extracted from the gun, could have been transferred to the gun when it was placed on defendant's side of the bed. Counsel also reminded the jury that defendant had argued with V.G. that night, and she was angry when he left. V.G. knew he would, as usual, come back after moving his car. "Somebody," counsel argued, must have dropped the gun that Deputy Guild found.

### III.   Verdicts and Sentencing

The jury found defendant guilty of both counts. In bifurcated proceedings, the trial court found true that defendant had a prior strike. The court also found the two aggravating factors to be true. The court sentenced defendant to prison for an aggregate term of four years.

Defendant timely appealed.

**DISCUSSION**

Defendant argues the trial court abused its discretion in excluding evidence about 1) V.G.'s prior conviction for attempted voluntary manslaughter, and 2) statements V.G. allegedly made about being vindictive. According to defendant, there was "more than sufficient circumstantial evidence linking [V.G.] to the possession of the firearm." Further, when taken together, the excluded evidence would have "fully presented [defendant's] defense of third party culpability.[3]

The People respond that defendant has, at least in part, forfeited the argument because the trial court failed to exclude V.G.'s statements about being vindictive to the police or the defense investigator. We read the record differently and will proceed to the merits.

*I.    No Error in Excluding Third Party Culpability Evidence*

As our Supreme Court has explained, "courts should simply treat third-party culpability evidence like any other evidence: if relevant it is admissible (§ 350) unless its probative value is substantially outweighed by the risk of undue delay, prejudice, or confusion (§ 352)." (*People v. Hall* (1986) 41 Cal.3d 826, 834.) To be admissible, third party culpability evidence offered by a defendant to demonstrate that a reasonable doubt exists as to his guilt must link the third party directly or circumstantially to the actual perpetration of the crime. (*People v. McWhorter* (2009) 47 Cal.4th 318, 372-373.) "[E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt."

---

**3**    In his reply brief, defendant mentions that he argued in his opening brief that the trial court erred in "not instructing the jury on third party culpability." We are unable to locate this argument in defendant's opening brief and therefore decline to address the issue. (*Nordstrom Com. Cases* (2010) 186 Cal.App.4th 576, 583 ["[a] party may not raise an issue for the first time on appeal [citation], and points raised for the first time in a reply brief on appeal will not be considered, absent good cause for failure to present them earlier"].)

7

(*Hall,* at p. 833.) When " 'assessing an offer of proof relating to such evidence, the court must decide whether the evidence could raise a reasonable doubt as to defendant's guilt and whether it is substantially more prejudicial than probative under [section 352].' " (*McWhorter,* at pp. 367-368.) We review for abuse of discretion a trial court's order excluding third party culpability evidence. (*People v. Elliott* (2012) 53 Cal.4th 535, 581.)

Despite defendant's contentions, defendant's proffered third-party culpability evidence does not raise a reasonable doubt as to his guilt. Neither V.G.'s prior attempted involuntary manslaughter conviction nor her passing statements about vindictiveness demonstrate a direct or circumstantial link between her and the loaded gun found by Deputy Guild. (See *People v. McWhorter, supra*, 47 Cal.4th at p. 373 [a court may properly exclude third-party culpability evidence where it "merely show[s] that the third party was the more likely perpetrator because he had a history of violence"].)

Similarly, although the proffered evidence might have demonstrated motive or anger toward V.G.'s previous romantic partners, this does not render it admissible here. (See *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1137 [cases holding "mere evidence of third party's anger toward victim was insufficient," and "third party's possible motive alone insufficient to raise reasonable doubt of defendant's guilt"].) Under the circumstances, defendant's proffered evidence amounts to nothing more than speculative conjecture that does not link V.G. to the actual perpetration of the crime, i.e., possession of a loaded gun. (*People v. Babbitt* (1988) 45 Cal.3d 660, 681-682 [" '[s]peculative inferences that are derived from evidence cannot be deemed to be relevant to establish the speculatively inferred fact in light of [§ 210], which requires that evidence offered to prove or disprove a disputed fact must have a tendency in reason for such purpose' "].)

Further, even if defendant's proffered evidence had some minimally probative value, we would still conclude the trial court did not abuse its discretion by ruling it was inadmissible under section 352. Such evidence ran a risk of confusing the jury and

8

unduly consuming time, leading to a high risk of prejudice that outweighed the (at best) minimal probative value.**4**

## II. No Denial of Meaningful Opportunity to Present a Defense

A defendant has a right to present "a complete defense." (*California v. Trombetta* (1984) 467 U.S. 479, 485.) In general, " 'the ordinary rules of evidence do not impermissibly infringe on the accused's [constitutional] right to present a defense. Courts retain . . . a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice.' " (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.) This principle is equally applicable in the case of evidence of third-party culpability. (*Ibid*.)

The court's exclusion of evidence regarding V.G.'s attempted involuntary manslaughter conviction and statements that she was vindictive did not prevent defendant from presenting his defense. The jury heard defendant's testimony that 1) V.G. was angry due to their fight, 2) she was familiar with defendant's practice of moving his cars during and following their fights, and 3) V.G. called the police and warned them that defendant might have a gun. During closing argument, defense counsel pointed to certain parts of this testimony and argued that "[s]omebody" other than defendant must have dropped the gun found by Deputy Guild. Although the jury ultimately rejected defendant's third-party culpability defense, that does not mean defendant was prevented from presenting this defense. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1242-1243

---

**4** Defendant claims the evidence was admissible under section 1230 as a statement made by an unavailable witness (V.G. asserted her Fifth Amendment right not to testify) because it was against V.G.'s penal interest. Unlike admitting to an uncharged crime, as the trial court recognized, describing oneself as vindictive or explaining that one has a prior conviction is not against one's penal interest. Likewise, evidence that someone claims to be vindictive or previously tried to harm a former romantic partner is exactly the type of character evidence that section 1101 prohibits.

[exclusion of third party culpability evidence did not constitute a violation of the federal constitutional rights to present a defense or to confront and cross-examine witnesses].)

Having found no error, we need not address defendant's claim of prejudice.

**DISPOSITION**

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
MAURO, Acting P. J.

/s/
MESIWALA, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.